# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE L. ARDDS,<br><br>        Plaintiff,<br><br>  v.<br><br>D. HICKS,<br><br>        Defendant. | Case No.: 1:19-cv-01738-SAB (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING ACTION, WITHOUT PREJUDICE<br><br>(ECF No. 55) |

Plaintiff Antoine L. Ardds is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Both parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 39.)

Currently before the Court is Defendant's motion for summary judgment, filed May 12, 2021.

## I.

## RELEVANT BACKGROUND

This action is proceeding against Defendant Hicks for excessive force in violation of the Eighth Amendment.

Defendant filed an answer to the complaint on September 11, 2020. (ECF No. 35.)

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on January 28, 2021. (ECF No. 52.)

///

On May 12, 2021, Defendant filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 55.) Plaintiff filed an opposition on June 14, 2021, and Defendant filed a reply on June 18, 2021. (ECF Nos. 56, 57.)

On July 1, 2021, Plaintiff filed a sur-reply. (ECF No. 58.)

On July 6, 2021, Defendant filed a motion to strike Plaintiff's sur-reply as improper. (ECF No. 59.)

## II.

## LEGAL STANDARD

### A.  Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). "The evidence must be viewed in the light most favorable to the nonmoving party." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant. Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a

defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A.   Summary of CDCR's Administrative Appeal Process[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4). Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed. Id. If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, *et seq.*, was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. See CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020). However, there is no dispute that the events alleged in the complaint took place before the repeal took effect.

4

administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

**B.  Summary of Relevant Factual Allegations of Plaintiff's Complaint**

On June 27, 2019, at approximately 11:45 a.m., Plaintiff was summoned to his assigned cell, and once back in this cell he was ordered by back up to the food tray slot to be cut free from the zip ties. Plaintiff complied with the order, and Defendant Hicks intentionally cut into Plaintiff's right wrist slicing his vein, causing severe injury. Plaintiff confronted Defendant Hicks which caused the original designated officers to acknowledge and report the assault to their supervisors. Once the sergeant was informed, Plaintiff was pulled from his cell so medical staff could document the assault.

**C.  Statement of Undisputed Facts[2]**

1.  Plaintiff has been incarcerated within CDCR since September 13, 1999, and was a

---

[2] Hereinafter referred to as "UF."

5

Prisoner at the time he filed this action. (Declaration of J. Mendez ("Mendez Decl.") ¶ 7, ECF No. 55-4; Compl. at 3, ECF No. 1.)

2. Between August 9, 2019 and December 13, 2019, Plaintiff submitted only one inmate appeal/grievance that either (a) names or identifies correctional officer D. Hicks, or (b) alleges that Plaintiff was subjected to excessive force on or about June 27, 2019: Log No. CSPC-3-19-04385. (Mendez Decl. ¶ 7, Exs. A, B.)

3. On June 29, 2019, Plaintiff submitted Log No. CSPC-3-19-04385, alleging assault and battery by Correctional Officer D. Hicks, on June 27, 2019. (Mendez Decl. ¶¶ 7-8, Exs. A, B.)

4. The first level of review was bypassed, and Plaintiff's grievance was processed at the second level of review as a staff complaint on July 9, 2019. An initial decision denying the appeal at the second level, and determining that staff did not violate policy, was issued on August 16, 2019. (Mendez Decl. ¶ 8, Exs. A, B, C.)

5. It was then determined that Plaintiff's appeal should be reviewed by the Institutional Executive Review Committee, which is tasked with reviewing allegations of excessive force. (Mendez Decl. ¶¶ 9-10.)

6. Plaintiff was advised by letter on August 20, 2019, that there would be a delay in processing his appeal, and was sent another letter on August 21, 2019, advising him that the appeal was being sent to an Associate Warden for review at the second level. (Mendez Decl. ¶ 10, Exs. D, E.)

7. Plaintiff received three additional notices of delay associated with the IERC review, and an amended Second-Level Response was issued on January 17, 2020. (Mendez Decl. ¶¶ 11-12, Exs. F, G.)

8. Plaintiff appealed Log No. CSPC-3-19-04385 (COR-19-04385/TLR 2001522) to the Office of Appeals for review at the third and final level on February 10, 2020. (Declaration of H. Moseley ("Moseley Decl.") ¶¶ 6-7, Exs. A, B.)

9. Plaintiff's appeal was denied at the third and final level of review on April 29, 2020. (Moseley Decl. ¶ 7, Exs. A, B, ECF No. 55-5.)

///

**D.    Defendant's Motion to Strike Plaintiff's Sur-Reply**

On July 1, 2021, Plaintiff filed a declaration in support of his opposition to Defendant's motion-essentially a sur-reply.

The Local Rules provide for a motion, an opposition, and a reply. See E.D. Cal. R. 230(l). There is nothing in the Local Rules or the Federal Rules that provides the right to file a sur-reply. The court generally views motions for leave to file a sur-reply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted). However, district courts have the discretion to either permit or preclude a sur-reply. See JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file a sur-reply where it did not consider new evidence in reply).

Defendant correctly argues that Plaintiff does not have the right to file a sur-reply. Additionally, Plaintiff has failed to file a motion seeking leave to file a sur-reply. However, in light of Plaintiff's pro se status the Court will deny motion to strike.  The Court has reviewed Plaintiff's sur-reply but finds that the arguments raised in the sur-reply do not change the court's analysis of Defendant's summary judgment motion.

**E.    Analysis of Defendant's Motion**

Defendant argues that despite having an administrative remedy available to him, Plaintiff failed to properly pursue it—he did not receive a decision at the third and final level of review prior to filing this action.

Here, it is undisputed that between August 9, 2019 and December 13, 2019, Plaintiff submitted only one inmate appeal/grievance that either (a) names or identifies correctional officer D. Hicks, or (b) alleges that Plaintiff was subjected to excessive force on or about June 27, 2019: Log No. CSPC-3-19-04385.  (UF 2.)  On June 29, 2019, Plaintiff submitted Log No. CSPC-3-19-04385, alleging assault and battery by Correctional Officer D. Hicks, on June 27, 2019.   (UF 3.)  The first level of review was bypassed, and Plaintiff's grievance was processed at the second level of review as a staff complaint on July 9, 2019. An initial decision denying the appeal at the second level, and determining that staff did not violate policy, was issued on August 16, 2019. (UF 4.)  It was then determined that Plaintiff's appeal should be reviewed by the Institutional Executive Review Committee, which is tasked with

reviewing allegations of excessive force.  (UF 5.)  Plaintiff was advised by letter on August 20, 2019, that there would be a delay in processing his appeal, and was sent another letter on August 21, 2019, advising him that the appeal was being sent to an Associate Warden for review at the second level. (UF 6.)  Plaintiff received three additional notices of delay associated with the IERC review, and an amended Second-Level Response was issued on January 17, 2020.  (UF 7.)  Plaintiff appealed Log No. CSPC-3-19-04385 (COR-19-04385/TLR 2001522) to the Office of Appeals for review at the third and final level on February 10, 2020.  (UF 8.)  Plaintiff's appeal was denied at the third and final level of review on April 29, 2020. (UF 9.)

Plaintiff argues that the time expired for Log No. CSPC-3-19-04385 by way of a memorandum from the Office of Appeals on June 4, 2021.  (ECF No. 56 at 5, 73.)  However, Plaintiff's Exhibit B is not sufficient evidence to support his contention.  Rather, Exhibit B contains an Acknowledgement of Petition for Writ of Habeas Corpus from the Kings County Superior Court; an Authorization and Release of Information from the Prisoner Advocacy Network; and an undated, unsigned, unaddressed memorandum from the Office of Appeals identifying that "[p]ursuant to Title 15, section 3486(i)(10), if the Office of Appeals is not able to respond to a claim in 60 calendar days, as in this case, then the claim must be answered "time-expired." (Id. at 73.)  This case is not identified, and there is no documentation to indicate this memorandum was sent to Plaintiff, let alone sent to him in response to CSPC-3-19-04385. (Id.)  In addition, section 3486(i)(10) of Title 15 was not operative, as it was implemented as an emergency regulation effective June 1, 2020, of which the Court may take judicial notice. Cal. Code Regs. tit. 15, § 3486(i)(10) (2020); Fed. R. Evid. 201.  Thus, there is nothing in Exhibit B which  demonstrates that Plaintiff properly exhausted administrative remedies prior to filing his complaint, or that he was somehow excused from the exhaustion requirement.  (ECF No. 56, 5:1-5, 73; ECF No. 55-3, UF Nos. 8, 9; ECF No. 1.)  Furthermore, Plaintiff's submission of other grievances and appeals are not relevant and do not rebut the fact that he failed to receive a third level decision for Log No. CSPC-3-19-04385 prior to filing the instant action.

Plaintiff contends that the administrative remedies were not available to him because of Defendant Hicks "intimidation, [h]arassments, and intentional withholding and destruction of his legal materials protaining [sic] to this civil suit and other active actions in similarity."  (ECF No. 56 at 5:17-

23, citing Ex. C.)  However, Exhibit C does not support Plaintiff's contention.  Rather, Exhibit C contains letters from the Prisoner Advocacy Network to various CDCR divisions; a declaration by Plaintiff; a letter from the State Personnel Board; a letter from the Department of General Services; a letter from the Office of the Inspector General; and correspondence from CDCR.  (Id. at 76-89.) Although some of the documentation contains allegations that Plaintiff does not have access to his legal materials, the allegations are insufficient to demonstrate that the administrative grievance process was unavailable to Plaintiff prior to filing the instant action.  See Ross v. Blake, 136 S.Ct. 1850, 1859-60 (2016) (administrative procedures are unavailable to inmates in certain circumstances: (1) when the grievance process operates as a dead-end; (2) when the administrative scheme is so opaque that it becomes incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process).  Indeed, the undisputed facts demonstrate that the administrative grievance process was available to Plaintiff prior to filing this action.  Plaintiff submitted an appeal of the second level respond to CSPC-3-19-04385 to the third level of review on February 10, 2020, and the appeal was denied on April 29, 2020.  These undisputed facts belie Plaintiff's claim that the administrative grievance process was unavailable, as the claim was exhausted *after* he filed the instant action.  See Kenner v. W.I.N.G.S. Sup'r, 331 F. App'x 483, 484 (9th Cir. 2009) ("The district court properly dismissed the action because [plaintiff] did not complete the prison grievance process prior to filing suit."); McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (requiring dismissal without prejudice where a prisoner "d[oes] not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed").

Plaintiff's contention that his and his advocates letters to various prison officials and agencies demonstrate that he provided "fair notice" of his claims to CDCR, is without merit.  The prison's requirements, not the PLRA, defines the boundaries of proper exhaustion.  Akhtar v. Mesa, 698 F.3d 1202, 1211 (9th Cir. 2012) (citing Jones v. Bock, 549 U.S. at 218) ("[T]he level of detail necessary in a grievance to comply with a prison's grievance procedures will vary from system to system and claim to claim[.]"); see also Woodford v. Ngo, 548 U.S. at 90-91 ("Proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'").

Lastly, to the extent Plaintiff contends that the delay in issuing and receiving the second level response thwarted his exhaustion efforts, such claim is without merit. Plaintiff could not have reasonably believed prison authorities would not respond to his appeal. It is undisputed that while his appeal was pending, he was informed in writing four separate times that there would a delay in responding to his appeal. (UF 6, 7.) Prison officials need not strictly adhere to the time limits for response to an administrative grievance as long as the prisoner is given an explanation, as was done here. Rios v. Paramo, 14CV1073-WQH(DHB), 2016 WL 8731085, at *19-20 (S.D. Cal. July 15, 2016). Extensions of this nature are permitted by prison regulations. See Cal. Code. Regs. tit. 15, § 3084.8(d) and (e). Furthermore, upon conclusion of the second level of review of his appeal, Plaintiff continued his appeal at the third level, demonstrating that he believed administrative remedies were still available to him, despite the delay. Accordingly, Defendant's motion for summary judgment shall be granted.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendant's motion for summary judgment is granted; and
2. The instant action is dismissed, without prejudice, for failure to exhaust the administrative remedies.

IT IS SO ORDERED.

Dated: __**August 6, 2021**__

UNITED STATES MAGISTRATE JUDGE